IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS HENDRICKS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-0613 |
| | : | |
| v. | : | |
| | : | |
| JO ANNE BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Giles, J.                                                                                                            September 25, 2007

## I.   INTRODUCTION

Dennis Hendricks ("Plaintiff") seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c) of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act").  Plaintiff filed a Request for Review seeking reversal of the Administrative Law Judge's decision and an award of disability benefits, arguing that the Commissioner's decision is not supported by substantial evidence and is contrary to law.  Defendant filed a Response to the Request for Review (docketed as a Motion for Summary Judgment), arguing that substantial evidence supports the Commissioner's decision that Plaintiff could perform the unskilled light jobs identified by the Vocational Expert.

For the reasons set forth below, Plaintiff's Request is granted in part, and denied in part.  The matter is remanded to the Commissioner for further proceedings consistent with this Memorandum

1

and Order. Defendant's Response (Docket No. 10), to the extent that it is considered a motion for summary judgment, is granted in part and denied in part.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on April 21, 2003 alleging disability with an onset date of April 30, 2000, due to chronic pain from rheumatoid arthritis, heart disease, liver disease, lung disease, brain tumor and "disintegrated" spinal discs.[1] (R. 99, 123.) Plaintiff, represented by Nicholas Orlyk, Esquire, appeared and testified at an administrative hearing before Administrative Law Judge (ALJ) Diane Moskal on October 27, 2004. (R. 28-68.) Denise Hendricks, Plaintiff's wife, and vocational expert ("VE") Nancy Harter also testified at the administrative hearing. (R. 28-68.)

On January 31, 2005, the ALJ issued an adverse ruling, finding that Plaintiff was not disabled within the meaning of the Act. (R. 15-26.) She found that while Plaintiff had not engaged in substantial gainful activity since the alleged onset date, he retained the capacity to perform light, unskilled work. (R. 25.) Plaintiff submitted a timely request for review of the hearing decision on March 16, 2005. (R. 11.) The Appeals Council denied Plaintiff's request on November 4, 2005, rendering the ALJ's decision the final decision of the Commissioner. (R. 6.) Plaintiff filed his complaint in district court on February 22, 2006.

---

[1] Citations to the administrative record will be indicated by "R." followed by the page number.

### III.   DISCUSSION

A.  <u>Standard of Review</u>

The role of this court upon judicial review is to determine whether substantial evidence in the administrative record supports the Commissioner's final decision.  See <u>Stunkard v. Sec'y of Health & Human Serv.</u>, 841 F.2d 57, 59 (3d Cir. 1988).  The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citations omitted).  It is more than a mere scintilla of evidence but may be less than a preponderance.  See <u>Stunkard</u>, 841 F.2d at 59.  This court's review is not <u>de</u> <u>novo</u>, and the evidence of record will not be weighed a second time.  See <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

B.  <u>Burden of Proof in Disability Proceedings</u>

In order to be found "disabled" under the Act, a plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. § 416.905(a).

The Social Security Administration (SSA) has promulgated regulations establishing a five-step sequential evaluation for determining whether a claimant is disabled.  <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999).  At step one, the Commissioner must determine whether a claimant is engaged in "substantial gainful activity."  20 C.F.R. § 416.920(b); <u>Plummer</u>, 186 F.3d at 428.  If a claimant is, then she is not disabled.  <u>Id.</u>  At step two, the Commissioner must determine whether claimant suffers from a "severe" impairment or combination of impairments.  20 C.F.R. §

416.920(c). If not, the claimant is determined not to be disabled. Id. At step three, the Commissioner must determine whether the claimant's severe medical impairment(s) meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, the claimant is disabled. Id. If the claimant's impairment(s) do not meet a listed condition, the Commissioner proceeds to step four to determine whether a claimant retains the residual functional capacity (RFC) to perform her past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimaint retains such capacity, she is not disabled. If not, the Commissioner proceeds to step five. At this final step, the burden of production shifts to the Commissioner to demonstrate that there are jobs existing in significant numbers in the national economy that the claimant can perform, "consistent with her medical impairments, age, education, past work experience and residual functional capacity." Plummer, 186 F.3d at 428; 20 C.F.R. § 416.920(e), (g).

C.   The ALJ's Decision

The ALJ issued an adverse decision on January 31, 2005, in which she reached the fifth step of the sequential analysis and concluded that, while Plaintiff could not return to his past relevant work, there exist jobs in significant numbers in the national economy that Plaintiff can perform. (R. 25-26.) The ALJ found that Plaintiff had the following severe impairments: musculoskeletal pain, hepatitis C and depression. (R. 25.) She found that the testimony of Plaintiff and his wife could not be fully credited. (R. 25.) She determined that Plaintiff retained the RFC to perform light and unskilled work. (R. 25.)

>   1.   *Substantial evidence does not support the ALJ's findings that Plaintiff's conditions of fibromyalgia and carpal tunnel syndrome are not severe but substantial evidence does support the ALJ's findings that Plaintiff's conditions of personality disorder and coronary artery disease are not severe.*

Plaintiff alleges that the ALJ erred in finding that the following impairments were not severe: personality disorder, fibromyalgia, coronary artery disease and carpal tunnel syndrome. At step two of the sequential evaluation process, an ALJ must determine whether a plaintiff has a severe impairment or combination of impairments "which significantly limits one's physical or mental ability to do basic activities." 20 C.F.R. § 404.1520(c), 416.920(c). In determining whether an impairment or combination of impairments are severe, ALJs are instructed that

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather it should be continued.

SSR 85-28, 1985 SSR WL 56856 (S.S.A. 1985). The threshold at step two is minimal: "if the evidence presented by the [Plaintiff] presents more than a 'slight abnormality', the step two requirement of 'severe' is met, and the sequential evaluation process should continue. Reasonable doubts on severity are to be resolved in favor of the [Plaintiff]." <u>Newell v. Comm'r of Social Security</u>, 347 F.3d 541, 546-47 (3d Cir. 2003).

   a.   <u>Personality disorder</u>

Notations of a personality disorder do appear in the record. Hospital records from February 13, 1989 contain a secondary diagnosis of panic disorder. (R. 442.) On March 22, 1990, Dr. Michaelson provided a history of Plaintiff's mental illness to the Pennsylvania Bureau of Disability

Determination and elaborated that:

> Since then he's been seen by various psychiatrists, well documented is his aggressive paroxysmal violent behavior and followed by passive dependent personalities. Multiple complaints over this throughout the years but without additional documentation for any organic problems except for personality disorder, which apparently has seriously limited his ability to function.

(R. 431)(emphasis added). Additionally, the SSA consultative examiner, Clayton Chang, M.D., noted a diagnosis, and history, of the following conditions: borderline personality disorder, major depression and bipolar affective disorder. (R. 265.) Neither Plaintiff's treating psychiatrist, Dr. Faraq, or the agency psychologist, Dr. Williams, diagnosed Plaintiff as suffering from a personality disorder and therefore do not attribute Plaintiff's limitations to this condition. Based on the paucity of evidence concerning how Plaintiff's personality disorder impacts him, substantial evidence supports the ALJ's finding that Plaintiff's personality disorder is not a severe condition.

    b.    <u>Fibromyalgia</u>

Substantial evidence does not support the ALJ's finding that Plaintiff's condition of fibromyalgia is not severe. On April 25, 2003, Plaintiff saw Jeffrey Lumley, D.O., and reported stabbing, worsening back pain for a duration of one year, as well as bilateral wrist, knee and hand pain, all worsening with use. (R. 212.) Dr. Lumley noted a limited range of motion in the spine due to pain. (R. 212.) A physical examination revealed tenderness along the spine as well as paravertebral muscle spasm. (R. 212.) There was also tenderness in the right knee and pain with motion, whereas the left knee had no swelling and a full range of motion. (R. 213.) Both feet had full range of motion and lacked swelling. (R. 213.) Plaintiff had full range of motion in both shoulders and elbows.

Plaintiff saw Dr. Leanne Beidler, whom he identified as his primary care doctor, on at least two occasions in June 2003 during which he complained of pain in his back, hands, and neck. (R. 237.) Lumbar spine imaging performed on June 23, 2003 showed facet degeneration at L5-S1 and suggested right spondylolysis[2] at L5. (R. 235.)

Beginning in December 2003, Plaintiff received treatment under the care of Larry H. Chou, M.D., at the Sports and Spine Rehabilitation Center at Penn Medicine. Dr. Chou observed that lifting, bending, walking and climbing aggravated Plaintiff's episodic lower back pain. (R. 512.) Dr. Chou noted "severe low back pain of unclear etiology" as well as "mild lumbar discogenic disease with mild neural foraminal stenosis." (R. 303.) At a follow up appointment with Dr. Chou on June 30, 2004, Plaintiff complained of persistent pain in his neck, lower back, legs and both hands.

To a physical therapist whom he saw three times, Plaintiff reported constant pain throughout his body and difficulty with dressing, bathing, grooming, sleeping, housework, standing, lifting, driving, walking and using stairs. (R. 481-82.)

Rheumatologist Preethi Thomas, M.D., saw Plaintiff on May 18, 2005 for evaluation of a possible connective tissue disease. (R. 489-91.) Plaintiff reported pain throughout his body, particularly in his neck and lower back. Dr. Thomas noted that he presented with "overwhelming fatigue and chronic pain". (R. 490.) She concluded that he did not have any clinical signs of a connective tissue disease and determined that the "most likely diagnosis in this case is fibromyalgia." (R. 490.) Dr. Thomas explained that fibromyalgia could also cause an inability to focus and memory problems. (R. 490.)

---

[2] Degeneration or deficient development of a portion of the vertebra. Id.

Plaintiff's treating physician, Ayaz M. Haroon, completed a medical assessment of Plaintiff's ability to perform work related activities. (R. 345-49.) She indicated that Plaintiff suffers from fibromyalgia, with an onset date of April 2001. (R. 345.) Dr. Haroon made the following assessment of Plaintiff's abilities: sit for a maximum of two hours, stand for a maximum of twenty minutes, walk for a maximum of thirty minutes in an eight hour workday due to his pain, occasionally lift twenty-five pounds, occasionally use his arms, hands, legs and feet. (R. 345-46.) She specified that his pain affected his entire body, including his joints, rated a "7" on a "1-10" scale and was aggravated by weather, movement and exertion. (R. 348.) Dr. Haroon identified his pain as a chronic condition.

The record also contains medical records dated from June 27, 2003 through May 25, 2005. Identity of the treating physician is unclear from the records. On October 20, 2004, Plaintiff complained of the following: fatigue, generalized body aches, and multiple tender points all over his body, including all extremities and major joints. (R. 529.) Records dated January 25 and May 12, 2005 include an assessment of fibromyalgia. (R. 527-28.) On May 12, 2005 Plaintiff reported of generalized musculoskeletal body aches and sought stronger pain medications. (R. 527.)

Plaintiff was also treated at the Penn Pain Medicine Center by Adam R. Burkey, M.D., and Hershel Kotkes, M.D., in August and September 2004. (R. 332-344.) He reported pain throughout his body, concentrated in his joints and lower back. (R. 337.) Dr. Burkey noted the muscle pain and tender points and diagnosed fibromyalgia. The treatment plan included Effexor, aquatherapy and Neurontin (to help Plaintiff sleep). (R. 332, 336.) In a report to Dr. Chou, Drs. Burkey and Kotkes reported that Plaintiff had multiple tender points typical of fibromyalgia, with normal motor strength and appeared to be in no apparent distress.

The ALJ did find that Plaintiff suffered from severe musculoskeletal pain and the medical evidence indicates that several physicians believe that at least some of Plaintiff's pain can be attributed to fibromyalgia.  Substantial evidence does not support the ALJ's finding that Plaintiff's fibromyalgia is not a severe condition, and the matter must be remanded for a determination of whether Plaintiff's fibromyalgia is a severe condition, and if so, its impact on Plaintiff's RFC.

    c.    <u>Coronary artery disease</u>

Substantial evidence supports the ALJ's finding that Plaintiff's coronary artery disease, as an individual condition, is not severe.  The record does contain repeated complaints of chest pain and tightness in 1998 and again in 2003 and treating physician Dr. Lumley diagnosed Plaintiff's condition as coronary artery disease.  (R. 179, 187, 200, 208, 271.)  Following this diagnosis, however, cardiologist Dr. Spratt concluded that cardiac catheterization revealed that there was no evidence of coronary artery disease.  This is substantial evidence to support the ALJ's finding that Plaintiff's coronary artery disease is not a severe condition.

    d.    Carpal tunnel syndrome

Substantial evidence does not support the ALJ's finding that Plaintiff's carpal tunnel syndrome is not a severe condition.  Treating physician Dr. Lumley noted pain with motion and swelling in both hands, as well as mild serositis[3] in Plaintiff's wrists.  (R. 212-13.)  Plaintiff complained of pain in his hands to Dr. Beidler.  (R. 235.)

Plaintiff complained of numbness in both hands and fingers to Dr. Chou at the Sports and Spine Rehabilitation Center at Penn Medicine, who noticed swelling in both hands.  (R. 315.)  Dr.

---

[3] Inflammation of a serous membrane.  <u>Stedman's Online Medical Dictionary</u> (27th ed. 2004), <u>http://www.stedmans.com.</u>

Chou observed that grasping objects increased the pain in Plaintiff's hands  (R. 512.)  Dr. Chou recommended an epidural steroid injection as Plaintiff's pain was "so severe that he cannot work, play or sleep."  (R. 303.)  Plaintiff complained of persistent pain in both hands at a follow-up appointment with Dr. Chou on June 30, 2004.  Dr. Chou diagnosed Plaintiff with carpal tunnel syndrome in his right wrist, confirmed by electrodiagnostic testing.  He administered a combination of lidocaine and Kenalog in an attempt to alleviate Plaintiff's complaints of right hand pain.  (R. 307.) While Dr. Chou indicated that he would be willing to inject Plaintiff's right hand and reinject the left hand, he recommended Plaintiff seek treatment with a chronic pain management program as that was not the focus on Dr. Chou's practice.  (R. 307, 510.)  Dr. Chou recommended that Plaintiff wear bilateral hand splits.  (R. 310.)

In her opinion, the ALJ stated that Dr. Chou "recommended conservative treatment, including use of hand splints, vitamins and injections." (R. 21.)  Further, the ALJ notes that during the administrative hearing, Plaintiff "was not wearing the wrist splints prescribed by Dr. Chou in February 2004 . . . as he used his hands to go through a folder of medical papers.  His dexterity in going through the folder at the hearing was in contrast to his claim in . . . that his chronic pain 'inhibits ability to grasp objects hold or manipulate tools.'" (R. 22.)  Step two is a <u>de minimus</u> standard.  In order to establish that Plaintiff's carpal tunnel syndrome is "severe" he need not prove that he is unable to use his hands in any form at all points in time.  <u>See</u>, <u>e.g.</u>, <u>Newell</u>, 347 F.3d at 546-47.

The medical evidence documents the existence of Plaintiff's carpal tunnel syndrome in his right wrist, Plaintiff's complaints of pain associated with this condition to his physicians, the presence of swelling and pain with motion in the hands and wrists and the administration of pain

medication by injection to relieve the pain in his right wrist.  Substantial evidence does not support the ALJ's finding that Plaintiff's carpal tunnel syndrome is not a severe condition, and upon remand, the Commissioner shall determine whether this impairment is a severe condition standing alone, and if so, how it impacts Plaintiff's RFC.

The matter shall be remanded to the Commissioner for a determination of whether Plaintiff's claims of fibromyalgia and carpal tunnel syndrome together with Plaintiff's other impairments amount to a severe condition and impact steps three through five of the sequential evaluation.

2. *The ALJ failed to present a complete hypothetical scenario to the VE.*

A hypothetical question posed to a Vocational Expert must "reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the body of her decision, the ALJ credited the psychiatric review technique and mental residual functional capacity assessment completed by agency psychologist Dr. Williams.  (R. 24.) In these assessments, Dr. Williams found that Plaintiff suffers from the following moderate limitations: ability to understand, remember and execute detailed instructions; carry out detailed instructions; ability to maintain attention, concentration and pace for extended periods; interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.  (R. 244-45, 258.)  In the hypothetical scenario posed to the VE, however, the ALJ only included a moderate deficit of concentration, to the exclusion of other items which Dr. Williams found to be psychologically significant.  (R. 63.)   The VE's answer to such an incomplete

hypothetical question cannot be considered substantial evidence in support of the ALJ's conclusion that Plaintiff is not disabled. The matter must be remanded so that the ALJ can present a hypothetical scenario to a VE that reflects all of Plaintiff's impairments that are supported by the record.

## IV.   CONCLUSION

Having found that remand is appropriate for the foregoing reasons, the court declines to address the remainder of the arguments made by the parties. The matter must be remanded to the Commissioner, and an appropriate order follows.